Albert F. Pagni, State Bar No. 987
Clark V. Vellis, State Bar No. 5533
Jones Vargas
100 W. Liberty St., 12th Floor
P.O. Box 281
Reno, NV  89504-0281
Telephone:  (775) 786-5000
Fax:  (775) 786-1177

Michael T. Williams, *pro hac vice*
Jessica G. Simbalenko, *pro hac vice*
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, CO  80202-2617

Frank P. Kelly, III, *pro hac vice*
Ingrid L. Peterson, *pro hac vice*
Shook, Hardy & Bacon L.L.P.
333 Bush Street, Suite 600
San Francisco, CA  94104

Attorneys for Defendant
Ford Motor Company

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| GINNY V. WHITE *et al.*, | CASE NO. CV-N-95-279-BES (VPC) |
| Plaintiffs, | |
| vs. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

**DEFENDANT FORD MOTOR COMPANY'S MOTION *IN LIMINE* NO. 7, TO PROHIBIT PLAINTIFFS' COUNSEL FROM MAKING JURY ARGUMENTS THAT ATTACK THE LITIGATION STRATEGY OF FORD AND ITS ATTORNEYS OR THE COST OF FORD'S DEFENSE**

## INTRODUCTION

During closing arguments in the first and second trials, Plaintiffs' counsel attacked Ford and its attorneys for exercising Ford's legal right to put on a defense in this case. In keeping with the Ninth Circuit's directive to "ensure that the proceedings are not tainted by inflammatory argument appealing to passion or prejudice," *White v. Ford Motor Co.*, 312 F.3d 998, 1020 (9th Cir. 2002), *amended on other grounds*, 335 F.3d 833 (9th Cir. 2003), Ford hereby moves for an order prohibiting any such arguments during the retrial.

## BACKGROUND

In the first trial, Plaintiffs' counsel engaged in an extended attack on Ford's decision to defend against Plaintiffs' claims and to hire attorneys to represent them. In doing so, counsel asserted, with no supporting evidence, that Ford had spent "millions" to defend this case:

> Ford's attitude in these cases is to deny. No defect, they said. We didn't have any knowledge of anything. Trust us on that.
>
> And if per chance a horrible accident should occur, we'll defend that case. We'll spend millions in defense. We'll hire every expert that we can find. We'll talk about parabolic curves, we'll talk about broken ratchets and pawls and say it's just superficial.
>
> We'll hire nice people like Mr. Pinto to come in, and he is a nice man, but he's not Ford. It's a grandfatherly visage that he provides in here, but he's not Ford.
>
> He stands before you and says I'm sorry, we get the message, Ford's sorry too. But look over at the table. Three attorneys. They didn't make the decisions in this case. And Ford is not even present. They don't even have the dignity to come to court and hear your verdict and understand your verdict.

(Tr. 2217-18 (first trial).)[1] Counsel went on to portray Ford as a puppeteer pulling the strings of witnesses at the trial, and suggested that Ford and its lawyers had suborned perjury. (*Id.* 2218 (describing Tim Rakowicz as an "idealistic engineer" who was "shut down by Ford" and "now [is] limited to standing on the stand or sitting on the stand and answering questions under oath articulated to him from above, the faceless people from above").)

Next, counsel returned to his earlier theme that Ford deserved punishment for failing to station a company representative at counsel table. (*Id.* 2219 ("So if that's the position they took

---

[1] Excerpts are attached as Exhibit A.

1  two weeks ago in court, and no one has come forward in this courtroom, no one even shows up

2  at counsel table on the day of verdict, the day of judgment, the day to hear what you have to say,

3  have they gotten the message as [defense counsel] said?  I don't think so.").)

4        Finally, counsel chastised Ford for filing a counterclaim and made disparaging

5  innuendos about the integrity of Ford and its attorneys:

6  > So what do they do in these cases they defend to the hilt?  They sue the parents.
> They put them through hell.

7  > And then, if they get caught, they have the fallback position, they come before
> you humbly with a nice man.  He's a grandfather, but he's not Ford, and he says
> I'm sorry and Ford's sorry.

8

9  > But they don't come, and they're not going to change unless you make them.
> That's the case.

10

11  (*Id.* 2219-20.)

12        In the second trial, Plaintiffs' counsel referred to Ford's counsel's conduct in putting on

13  a defense as "outrageous" and "atrocious" several times and declared Ford's counsel's conduct

14  to be "a manifest outrage" and "offensive."  (*See, e.g.*, Tr. 1426:23-1427:9, 1445:22-23,

15  1557:14-15 (second trial).)  Plaintiffs' counsel accused Ford's counsel of attempting to "nullify"

16  the Court's instructions to the jury[2], implied that Ford's counsel improperly coached witnesses[3],

17  argued that Ford's counsel had "nerve" to state that Ford complied with the Safety

18  Administration's requests[4], and stated that Ford's counsel manipulated the documents and

19  witnesses in preparation for the retrial.[5]  Plaintiffs' counsel also expressed further outrage that

20

---

21  [2] Tr. 1426:23-1427:9.

22  [3] Tr. 1429:16-23 ("But you've got to decide whether the eight or nine days that were spent in preparing Mr. Rakowicz for his testimony was spent on the pursuit of having the attorney for
23  Ford find out what Mr. Rakowicz was going to say or whether it was something else.").

24  [4] Tr. 1445:5-23 ("Did Ford cooperate fully with the U.S. safety administration – he's talking there about NHTSA, right? – and agree to do a recall when the safety administration asked it to?
25  And he tells you the answer to that is yes.  What nerve.  What nerve . . . .  That they could ask you, that they could ask you to answer this question yes is outrageous.").

26  [5] Tr. 1446:4-11 ("And how did they – how do they expect you to get to the answers they want by answering these questions?  They expect you to get there by believing the story that they
27  brought into court to tell you after dozens and dozens and dozens of meetings and hours and documents and time and manipulation and what I would call pretzel making, taking someone
28  and turning him [Rakowicz] into a pretzel, and coming up with a new set of stories about what

*(Footnote cont'd on next page.)*

2

Ford's counsel had not come into trial admitting that spontaneous disengagement occurs, that Ford's counsel did not apologize on behalf of Ford for spontaneous disengagement, and that Ford's counsel instead caused a lengthy retrial on punitive damages to re-prove an issue that Plaintiffs' counsel argued was already found by the first jury.  (*Id.* 1426:11-1428:4.)[6]

## ARGUMENT

Plaintiffs' arguments disparaging Ford and its counsel for putting on a defense were improper.  In the words of the Nevada Supreme Court:

> Making improper comments by counsel which may prejudice the jury against the other party, his or her counsel, or witnesses, is clearly misconduct by an attorney.  Cases that have dealt with similar situations have uniformly condemned such statements as fundamentally prejudicial.

*Born v. Eisenman*, 962 P.2d 1227, 1232 (Nev. 1998).  The court in *Born* held that a trial judge is obliged, under the Nevada Code of Judicial Conduct, to refer cases involving such attorney misconduct to the State Bar.  *Id.* (citing Nev. Code of Judicial Conduct, Canon 3(D)(2)).

Nor is the Nevada Supreme Court alone in condemning such improper jury argument.  On the contrary, courts across the country have long recognized that such "[p]ersonal attacks on opposing parties and their attorneys, whether outright or by insinuation, constitute misconduct" because "[s]uch behavior only serves to inflame the passion and prejudice of the jury." *Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*, 1 Cal. Rptr. 2d 301, 315 (Cal. Ct. App. 1991).[7]  The

---

*(Footnote cont'd from previous page.)*

the facts are for this case."); *id.* 1450:19-22 ("And they should not have done this to him [Rakowicz], turning him into a pretzel.  And that's being kind about it.  And now he knows everything about everything when he used to know nothing about nothing.").

[6] This argument should be prohibited for the additional reason that the first jury <u>did not</u> find that spontaneous disengagement occurs.  There were no special findings from the first jury making any such determination.  Rather, the first jury found only that the parking brake was defective.  Such a finding likely resulted from the first jury's finding that the skip-thru-on-apply problem was the defect, not the alleged "spontaneous disengagement," because that jury also found that the defect was <u>not</u> the proximate cause of Plaintiffs' harm.

[7] *See also Stokely-Van Camp, Inc. v. FTC*, 246 F.2d 458, 465 (7th Cir. 1957) (setting aside FTC's cease-and-desist order because it relied on, *inter alia*, the "irrelevant" fact that defendants "vigorously defend[ed]" their position, "which, of course, they had a right to do"); *People v. Sandoval*, 841 P.2d 862, 877 (Cal. 1992) ("Personal attacks on opposing counsel are improper and irrelevant to the issues."), *aff'd*, 511 U.S. 1 (1994); *Postal Instant Press, Inc. v. Corral Rests., Inc.*, 930 P.2d 1001, 1002 (Ariz. 1997) ("Negative references to counsel on a personal

*(Footnote cont'd on next page.)*

1    United States Supreme Court has condemned attacks on the litigation strategy of an opposing

2    party, holding that "[s]uch . . . bitter and passionate attack[s] on [the defendant's] conduct of the

3    case, under circumstances tending to stir the resentment and arouse the prejudice of the jury,

4    should have been promptly suppressed," and that failure of a trial court to act in such a case

5    violates not only the right of the defendant to a fair trial by an impartial jury but also the duty of

6    the court to ensure for the public at large that the system of justice is administered fairly and

7    without passion or prejudice. *N.Y. Cent. R.R. v. Johnson*, 279 U.S. 310, 318-19 (1929).

8    In keeping with these principles, courts routinely recognize that attacks on the opposing

9    party or counsel undermine the administration of justice by "distracting [jurors] from fulfilling

10   their solemn oath to render a verdict based solely on the evidence admitted at trial."

11   *Las Palmas*, 1 Cal. Rptr. 2d at 315. Hence, the universal understanding is that "[s]uch means of

---

*(Footnote cont'd from previous page.)*

level are meaningless and in poor taste, and serve no purpose in the disposition of this or any other case."); *Garden Grove Sch. Dist. v. Hendler*, 403 P.2d 721, 722-24 (Cal. 1965) ("snide remarks and innuendo to impugn the motives and purpose of defendants" warranted reversal); *Amelia's Auto., Inc. v. Rodriguez*, 921 S.W.2d 767, 773 (Tex. Ct. App. 1996) ("Attacks upon the integrity of opposing counsel are categorically prohibited" and "are generally considered to be incurable."); *Escobar v. Seatrain Lines Inc.*, 573 N.Y.S.2d 498, 501 (N.Y. App. Div. 1991) ("'It is time that the bar should realize that when counsel in a close case resort to [attacks on opposing counsel] to win a verdict, they imperil the very verdict which they thus seek.' . . . 'When misconduct of counsel in interrogation or summation so violates the rights of the other party to the litigation that extraneous matters beyond the proper scope of the trial may have substantially influenced or been determinative of the outcome, such breaches of the rules will not be condoned.'" (citation omitted)); *Stephen's Jewelry, Inc. v. Admiral Ins. Co.*, 578 N.E.2d 520, 523-24 (Ohio Ct. App. 1989) ("'Argument to the jury, in which counsel charges opposing parties with framing or fixing up their defense by perjury arranged for or suborned, is improper unless there is evidence warranting the course pursued; and where counsel grossly abuses his privilege by persisting in making such unfounded charges to the manifest prejudice of opposing parties, it is the duty of the court to interfere, admonish offending counsel and instruct the jury to disregard the improper utterances, and a failure to do so is ground for a new trial.'" (citation omitted)); *Henker v. Preybylowski*, 524 A.2d 455, 458-59 (N.J. Super. Ct. App. Div. 1987) (accusation that defendant "act[ed] in bad faith to defeat plaintiffs' liability and damages claims" is "reprehensible" misconduct); *Marcus v. Palm Harbor Hosp., Inc.*, 61 Cal. Rptr. 702, 705 (Cal. Ct. App. 1967) ("Derogation of the opposing party and the impugning of his motives may be of such a serious nature as to constitute misconduct requiring a reversal."); *Paxton v. Misiuk*, 148 A.2d 217, 221 (N.J. Super. Ct. App. Div. 1959) ("An attack by counsel upon a litigant's character or morals, when they are not an issue, is a particularly reprehensible type of impropriety."); *Peacock v. Levy*, 299 P. 790, 793 (Cal. Ct. App. 1931) (reversing judgment because "misconduct in the present case consisted of numerous improper remarks in the argument [including attacks on appellants' counsel] whereby the flames of prejudice were fanned to such a point that no admonition on the part of the court could extinguish the fire").

winning a lawsuit cannot be commended or receive recognition and indorsement by [a court], instituted and maintained, as it is, on the principle of administering justice." *Keena v. United R.Rs.*, 197 Cal. 148, 160 (1925).

Such attacks are especially deleterious to the sound administration of justice when they inhibit manufacturers and other "deep pocket" defendants from raising legitimate defenses to future legal claims irrespective of the merit of those claims—the inevitable result if Plaintiffs here are allowed at the retrial to premise their claim for punitive damages on the lawful actions of Ford and its attorneys in defending the case.

Moreover, because Plaintiffs' attacks on Ford's counsel were not based on evidence in the record, they were improper for that additional reason. *See, e.g.*, *N.Y. Cent. R.R.*, 279 U.S. at 317 (condemning statements in closing argument that were "not fair comment on the evidence or justified by the record"); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 277-78 (5th Cir. 1998) (condemning statement in closing argument that was not based on testimony and was not fair comment on the evidence); *Higgins v. Hicks Co.*, 756 F.2d 681, 684 (8th Cir. 1985) ("In federal jury trials, counsel's argument must be limited by the evidence and law pertinent to the issues in the case." (internal quotation marks, brackets, and citation omitted)).  There is no reason to expect that the unsupported innuendos improperly employed by Plaintiffs' counsel during the first and second trials will be any more supported by the evidence in this one.

Nor can Plaintiffs' counsel's arguments be sanctioned under the guise of "reprehensibility" analysis. The Supreme Court has made clear that punitive damages must be based on the conduct that gave rise to the injury. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."); *id.* at 424 (while recognizing that a recidivist can be punished more harshly than a first-time offender, holding that courts must "ensure the conduct in question replicates the prior transgressions"). *Cf. Philip Morris USA v. Williams*, 127 S. Ct. 1057, 1063-64 (2007).  Ford's exercise of its right to defend itself, its litigation strategy, and the advocacy of its attorneys bears no relationship to the conduct giving rise to Plaintiffs' loss, all of which occurred before October 9, 1994.

5

**<u>CONCLUSION</u>**

Based on the foregoing, this Court should prohibit Plaintiffs' counsel from attacking the advocacy or litigation strategy of Ford or its attorneys, from commenting on the cost of the defense, and from suggesting in any way that Ford or its attorneys have asked any witness to lie under oath or have manipulated any data or documents.

Dated this 25th day of April, 2008.

Respectfully submitted,

s/ Jessica G. Simbalenko
Jessica G. Simbalenko
Michael T. Williams
Wheeler Trigg Kennedy LLP
1801 California Street, Suite 3600
Denver, Colorado 80202-2617

Albert F. Pagni, State Bar No. 987
Clark V. Vellis, State Bar No. 5533
Jones Vargas
100 W. Liberty St., 12th Floor
P.O. Box 281
Reno, Nevada 89504-0281

Frank P. Kelly, III
Ingrid L. Peterson
Shook, Hardy & Bacon L.L.P.
333 Bush Street, Suite 600
San Francisco, California 94104

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on this 25th day of April, 2008, a copy of the foregoing was filed electronically with the Federal Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

- **David J. Caputo**
  david.caputo@klinespecter.com

- **Peter D. Durney**
  pddurney@sbcglobal.net,christinelmiller@sbcglobal.net,melissa-heyden@sbcglobal.net

- **Frank P. Kelly**
  fkelly@shb.com

- **Thomas R. Kline**
  tom.kline@klinespecter.com

- **Don Nomura**
  dnomura@laxalt-nomura.com,bgroh@laxalt-nomura.com

- **Albert F. Pagni**
  afp@jonesvargas.com

- **Ingrid L. Peterson**
  ipeterson@shb.com,sfe-file@shb.com

- **Jessica G. Simbalenko**
  simbalenko@wtklaw.com

- **Shanin Specter**
  Shanin.specter@klinespecter.com

- **Clark V. Vellis**
  cvv@jonesvargas.com

- **Michael Timothy Williams**
  williams@wtklaw.com,mallett@wtklaw.com,kemezis@wtklaw.com

                                                s/ Jessica Simbalenko by Erinn Mallett